4-1845 Imaginal Systematic v. Leggett & Platt, Inc. The entire claim term in context is moving the fastening tool without the use of a vision guidance system until the fastening tool is located at a target fastening location. Can I ask just a quick couple of procedural questions before we get moving on this? Sure. You did, in fact, ask for a permanent injunction in the complaint. I went back and got it to see, but then after the jury verdict, you never moved for an injunction or a compulsory license or anything. Why is that? That was in the first case? Uh-huh. What we decided is because the issues as far as the damage determination in the first case were sort of convoluted, we wanted to have appellate review of those issues before we sought ongoing loyalties with respect to that. No, but that's not normal. Normally, at least the way we see it when it comes up to us is the motion is made, and it may be stayed by the district court until the completion of appellate review, but it isn't just abandoned and not made. I mean, we very seldom see people not move. I mean, you're not in trouble, right? No, we're not. No, right? We were practicing, and we were basically driven out of business by the infringement. I know. I saw that you were practicing, and so I was also surprised. Let me ask you something else. The opening brief when you asked for ongoing royalties indicated that since eBay, injunctions are rarely granted. Do you really think that? Because I don't think that. You're not a troll. I mean, it's true when you're talking about NPEs and trolls. It's absolutely true. That's exactly what we see playing itself out, but for companies like yours, I mean, I don't think it's true that injunctions are rarely granted. Our view is that injunctions are rarely granted unless the patentee is actually presently practicing the invention, and so in our case, we were driven out of business back in 2005, and so without the type of irreparable market damage that you might incur if you're competing with an infringer, then it's... When you say you were driven out of business, I guess that means you wouldn't have argued that if the infringement were terminated, you'd be able to go back into the market. That would have been difficult at that point in time. The company had lost its investors, and so that would have been very difficult. I will say, by the way, this issue is not before you because the issue, the collateral estoppel application and the ratio cotta application, all those issues were settled. We're now on to a new machine or a modified machine. I appreciate Your Honor's question, but I respectfully don't believe that issue bears on any of the issues on this appeal. If Your Honor believes it does, I'd be happy to address that. I was just very confused by the procedural progress because I didn't understand. A part of this case was, although it now seems to have been settled, the issue of whether there should be and what the amount should be of an ongoing royalty going forward on the same machine. For a while, that was part of this case, correct? That was part of the first case. No, it was also part of this case. When you brought in this case, it was both because, unless I'm mistaken, it was because they were continuing to infringe and you wanted an ongoing royalty. That is true, but with a slight modification. There was a motion in the first case after the appeal for an award of ongoing royalties. The District Court Judge Klausner ruled against us on that, but said you can bring a new case to recover royalties for the ongoing infringement, and that's what we did. We brought a new case. This one. This one. Yes. And didn't make a request for quote-unquote ongoing royalties in this case. We just made a traditional claim for the royalties since the judgment in the last case. Right, but there were two pieces to that. One part of it was infringement as it relates to the old machine, and now we're looking at the modification. Correct. But as to the old machine, you settled that part. We settled that part. The confusion is that there was some question as to why we weren't looking at a contempt proceeding versus a new action, but now we understand why you didn't seek that injunction. But with respect to the modified machine, because we're not under a contempt proceeding, we're just simply looking at the issue of infringement anew. Correct? Correct. All right. Now, okay, you can go ahead and get to where you wanted to go. Okay, so back to what the district court did and where the error came in. The district court looked at the dictionary definition of the word guidance, and the dictionary definition was the act of directing or controlling the path or course of something. Now, had the district court stopped there, the error would likely have been avoided, but the district court went on to look at subsequent dictionary, other dictionary definitions of the well-understood words path or course, and because those definitions refer to movement, the district court changed the definition of guidance to a system that directs or controls the direction or movement of something, and the addition of the word movement to the construction fundamentally alters the plain meaning of guidance. Controlling the movement of something, such as stop, go, slow down, speed up, is broader than controlling the path or course of an object, turn left, turn right. So by looking at a series of dictionary definitions that the district court did, it's not difficult to imagine getting far afield from the meaning that's used in the patent. It's reminiscent of that children's game telephone, where the first child whispers one thing, and as you go around the circle, the definition, the first thing said changes. I don't understand how your argument regarding this term would affect the outcome of this case, given the manner in which the infringing device operates. So very simply, if the construction is the construction proposed by Imaginal, namely moving the passing tool to the target passing location without using a camera to... And now I'm referring to the construction of vision guidance systems. So the dispute was over what that meant. And so if the construction is without the use of... But see, the accused device uses a camera, only one camera, and it is looking at the stapler, and it's deciding whether or not the stapler should move up and down based on whether or not the mattress is properly aligned below it. But what it is doing, quite clearly, is controlling the up and down movement of the stapler, because if something happens and the mattress moves or is ajar, and it no longer sees the direct connection, it stops the stapler in its tracks and doesn't allow it to continue on to go down and do the fastening. How is that not using a camera, even under your definition, for the purpose of moving the stapler in the direction generally perpendicular to the base? Guidance is not controlling the movement. Guiding is steering. Guiding is changing the aim. Guiding is not saying stop or go. But that doesn't make sense because the rest of the claim says, without the use of vision guidance system, in a direction generally perpendicular relative to the base. So what it's talking about is the stapler going up and down. It actually says exactly what direction we're talking about. Perpendicular to the base. So, I don't understand. Yes, so basically that's the general direction of the movement of the stapler, but to get to the target passing location there needs to be steering, which is the purpose of the vision guidance system. That's revealed in the specification. No, no, that's the prior element. Moving the module with the module alignment device. As I understand it from the patent, that is the portion of the method whereby the mattress is aligned so that the stapler would then be able to go up and down perpendicular to it. So that's a different element. It is a different element. That element is moving the modules along the base of the machine. No, it's not moving along the base. It's aligning the modules. Aligning them. Moving with the module alignment device. So you're moving the staples into rough alignment with the stapler. You seem to do that, and that's not a problem, and the district court said so. I didn't even understand the briefing on your part on that regard. You seem to suggest the district court for importing the negative limitation into the module alignment. He totally did not do that. So, I don't see, it seems like the camera is also used, though, to control the up and down movement of the fastening tool. And that's right, and that's not guidance. And if you look at the specification, it makes it clear what is meant by guidance. It says, without the vision guidance system of the 789 patent. The 789 patent is a guidance system which looks down the length of the stapler at the target fastening location and steers the stapler into the target fastening location. And that is the excluded vision guidance system. The patent doesn't exclude a vision guidance system which does nothing more than, say, go up or go down. And that's made clear in the written description because it says, without the use of the vision guidance of the 789 patent, but it says that vision guidance can be used in the module alignment step, which is exactly what happens here. The camera looks not at the target, which is very important, but the excluded vision guidance system is one that looks down at the target. This vision guidance system of the accused device does not look down at the target. It looks straight across and sees the first row of modules, and that is not vision guidance. That is not the excluded vision guidance term that is excluded by the patent. You don't argue that the 789 itself contains the definition of the phrase vision guidance. I would argue that it does. And that definition is quoted in the – and I'll read it – it's quoted in the 402 patent. Show me where it is in the 789. Okay. In the 789, it's at A1118, column 1, lines 23 to 27. And what it states is that the vision guidance system automatically locates the modules on the frame and then guides a fastener tool such as the stapler into proper position to secure the modules to the frame automatically. So that is the excluded vision guidance system. That very same language is used both in the 789 patent and in the 402 patent to describe what is excluded. And so – and the vision guidance system – the accused vision guidance system does not automatically locate the modules on the frame. It doesn't even look at the frame. It only looks at the module and sees that it's in alignment underneath the staplers, which is a permitted use of vision guidance. You're well into your rebuttal time. Do you want to save time? I will save the rest of it. Mr. Shumsky. Thank you, Your Honor. May it please the Court. Eric Shumsky representing the athletes. Judge Moore, I think that where you started, or at least where you started the questioning about the claims, construction is really the right place to begin, which is that this doesn't make any difference. This system uses a camera. It is a vision-based system that directs, controls the path, the course, the movement, whatever term you want to use, of these staplers up and down. And so under any of this language, it is plainly non-infringing. This was the whole point of the new system. The earlier devices did not use a camera. They used a computer positioning system in conjunction with mechanical grippers, and to get around the claim of the patents, to redesign, a perfectly permissible and laudable thing to do, the machines were changed to move to a vision-based guidance system, and the cameras are what do the work here. If you look at the Sturgis Declaration— When you say cameras, I look at the system and I think there's only one. Am I wrong? I apologize, Your Honor. I misspoke. Correct. I just want to make sure I'm not misunderstanding the accused device. No, you're quite correct, Your Honor. It is a camera. It looks down the length of the modules, and as the Sturgis Declaration explains, it's at A1288-93. This controls the movement of the staplers. It controls their course. It allows them to descend. It tells them to descend. If there is a lack of alignment, it literally tells the staplers to reverse course and to move back up. I couldn't tell that. Does it tell them to move up, or does it just tell them to stop? Does it actually cause the stapler to retract? Yes, Your Honor. You've got that CD with all the demonstrations of how it works. Yes, Judge. Which series of alignment photos is the one that you believe is use of the photo for the perpendicular movement? I'm actually not sure that any of the videos reflect the perpendicular movement of the staplers. What you see in, I believe it's Video Exhibits 7, 8, and 9, is the computer readout, which is the image of the camera sort of looking down the row of modules, and that shows the wire being realigned, one in real time and one is a bit slower. But I don't believe any of them actually show what Sturgis describes, which is the staplers going down, stopping, going down a little bit more, retracting. Long answer to a simple question for which I apologize. I don't believe any of them actually reflect that aspect of the movement. So the camera, or the guidance system, does operate while the staple is in the process of moving down from between the two sides of the module to the base where it will perform the stapling action. Correct, Judge Hull. That's exactly right, and that is what is controlling the downward movement and then potentially the upward movement of the staplers. Judge O'Malley, I think it's really telling that the argument quickly moves to the 7, 8, 9 patent, and I just want to pick up on your question about that. The construction that the other side has proffered is one that, first of all, seeks to import this limitation from the spec into the claims, namely to transform the meaning from a vision guidance system in the generic sense to the vision guidance system of the 7, 8, 9 patent. I think that right there is enough under Thorner v. Sony to say that that's an impermissible construction. But even if it weren't, even if you accepted that the 402 was trying to use the 7, 8, 9 as some kind of a definition, I would suggest that it shouldn't be permitted here precisely because the term is nowhere defined. I, to this day, couldn't tell you what the relevant aspect of the 7, 8, 9 patent is. Imaginal argues in its reply brief at page 11 that there are certain essential features of the 7, 8, 9 patents, and so now we're at the point where a vision guidance system in the 402 means the essential features of the vision guidance system of the 7, 8, 9 patent, but the essential features that were identified in the reply brief don't actually show up together in the 7, 8, 9 patent until dependent claim 30 out of 31 claims. This just doesn't provide the public notice that would be required, and it seems to us that the simpler construction is one that sticks with the ordinary meaning of the term. With respect to the issue of infringement, the district court says that the undisputed evidence shows that the camera is used for purposes of the perpendicular movement. So, if it's not in any of those submitted materials that you gave us, where is that undisputed evidence? Well, I believe it is reflected in the Sturgis Declaration, where Sturgis explains that it moves up and moves down stops and can move back up, and I don't believe there was any dispute about that in the record. I think that the court had that absolutely right. And I would hasten to add, Your Honor, that as we come to the court today, there has not been an argument, that is to say, Imaginal has not disputed that there's non-infringement as a matter of law under the district court's construction, and indeed under the construction, the slightly different construction that we had proffered. So, really, the only way, the only basis to disturb the judgment would be if the court agreed with Imaginal's proposed claim construction, and we think that has the defects that we were just discussing. Do you have anything further? No, the court has no further questions. Thank you very much. Mr. Hanley, you have some rebuttal time. Thank you, Your Honor. I'll start with a quote from the written description, and going back to this issue of vision guidance being steering and not just saying stop. What page and column, line and column? Column 3. This is, you're not at 789, you're at 402? This is at the 402 patent, column 3, line 43. Quote, mechanical guide 32 is used to steer the stapler head 30 to a target on the bottom portion of module without the use of the vision guidance system of the 789 patent. Now, that paragraph goes on to say that the invention, quote, may be used with a vision guidance system, and in this embodiment, vision guidance is less exact in guiding the stapler directly to the target as in the 789 patent, but could provide vision guidance to an initial position adjacent to each module. Now, that is exactly how vision guidance is used in the accused device. Vision guidance is not used to steer, which is the excluded aspect of vision guidance, and therefore, the accused device does not use vision guidance, the type of vision guidance that is excluded. Why didn't you write the relevant step of the claim that way then? I believe it was written that way. There's no reference to steering. There's no reference to the 789. It's without the use of vision guidance, moving the fastening tool to the target fastening location without the use of vision guidance. We think that the concept, the claim language in concert with the written description is very clear that the only excluded type of vision guidance is vision guidance that steers. But the very lines that you refer us to, so if you look at 49 and 50, it's understood that the mechanical guide may also be used with a vision guidance system. So use that same phrase, and then you say in this embodiment, the vision guidance is less exact in guiding the stapler. So you use the concept of vision guidance system without steering the stapler, but you're telling us that when you use vision guidance system in the claim, we have to assume it only means steering the stapler. Not precisely because the previous step, you need to read steps 6 and 7 together, moving the module with the module alignment device, and that doesn't exclude vision guidance. So you can use vision guidance in step 6. Well, it doesn't exclude some kind of vision, some kind of camera. But if you want us to assume that vision guidance always means steering the stapler, then number 6 wouldn't even involve steering the stapler, right? And you've just said right here that it doesn't. That's right, but my point is that reading the claim language in harmony with the written description, what you have is vision guidance is excluded in the moving the fastening tool step, so there's no steering, but vision guidance is allowed in the alignment step, which is moving the module along the face. Do I understand your argument to be, I think I understood it from the briefs to be, that the vision guidance system that must be excluded is the one from the 789 patent? In essence, but we specifically characterize what the excluded vision guidance system is, and there's a quote, it's the page I referenced earlier, there's an almost identical quote from column 1, starting line 40 of the 402 patent, is quoted, is a quote from the 789 patent, which is at A1118 at column 123. I don't understand, what vision guidance system is the one that's excluded according to your argument? It's one that automatically locates the modules on the frame. So it's not necessarily the one of the 789 patent? It is, but the 402 patent does a little better by telling you what it is about the 789 patent, the vision guidance system that is excluded. So you're telling me today, not the identical one? It is the identical one. It's simply characterizing it in a way that is digestible in the 402 patent. So wait, I just want to be clear. Is the only vision guidance system that you have exempted in that element the one in the 789 patent? Are you saying 402 has said the only one that can't be used is exactly the one in 789? That's true, but bear in mind that the one in the 789 patent, it's got general features, and there are many optional features. But the sentence you just pointed us to, it is understood that the mechanical guide may also be used for the vision guidance system. In this embodiment, the vision guidance system is less exact in guiding the stapler directly to the target, as in 789. So aren't you, in this sentence, saying it's not exactly the same vision guidance system as the 789? Isn't that just plain meaning of this sentence? I don't think so. I think that's saying what is included. The one that's excluded is the one in the 789 patent. The sentence that you just read is telling you what is included within the invention of the 402 patent. And that's exactly the point. So it's not all of the aspects of vision guidance in 789 that are excluded? It's only a particular portion of what the 789 vision guidance system will do? It is the general concept of the 789 patent vision guidance, which is using cameras to look down at the target passing location and steer the stapler to the target passing location. Perfect. I think we're out of time. Thank both counsel for their arguments. The case is taken under submission.